■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERNEST HICKS, Also Known as ERNEST TAYLOR, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Hutcherson, J.), rendered June 25, 1985 convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The

appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

On the instant appeal, the defendant argues, *inter alia,* that (1) the stop of a car which he was driving by the police and the ensuing search of the car's carburetor which disclosed a gun were not supported by probable cause, and (2) the gun should therefore have been suppressed.

Initially, we reject the People's argument that defendant has no standing to raise the suppression issue. The defendant was charged with constructive possession of a weapon under the presumption contained in Penal Law § 265.15 (3), and pursuant to *People v Millan* (69 NY2d 514), he has standing to raise the suppression issue. Nevertheless, we disagree with the defendant's argument on the merits.

At the suppression hearing, Police Officer Long testified that on June 3, 1984, at approximately 6:30 P.M., he received an anonymous tip from a woman who said that "there was going to be a hit that night on a person named Mackey, who had a store on Quincy Street and the person doing the hit was named E.T. and the gun was going to be in a carbur[e]tor, a gray Ford LTD, and the place of business was in the area of Albany and St. Johns. It was going to be followed by a white van". The officer knew from his own knowledge that Mackey, who was referred to in the tip, had a business on Quincy Street, and had been robbed at that location two years prior thereto. Long's partner, Officer Carmosin, had arrested one Terry Mason for the robbery, and Mason's trial was to start on June 4, 1984. Long had also learned from Carmosin, prior to June 3, 1984, that Mackey had "been harassed very recently". Carmosin testified at the suppression hearing that Mackey had telephoned him on May 31, 1984, and told him that subsequent to the robbery, he had seen Mason passing his place of business on certain occasions in a gray Ford LTD. Carmosin responded to that call and saw a gray Ford LTD with a license plate number 665ZNE in front of Mackey's place of business. After returning to the precinct, Carmosin had put a notice on the bulletin board stating that "a gray Ford LTD with plate number 665 Zebra, Nora, Edward was seen in front of his [Mackey's] location on several occasions * * * and that any calls received from Mr. Mackey in reference to that car, that the other fellows in the office would take some kind of initiative". Carmosin also told Long of this

incident prior to June 3, 1984. After receiving the anonymous tip on June 3, 1984, and discussing it with Carmosin, both officers proceeded to the location given in the tip. They observed a gray Ford LTD which had a license plate number of 665ZNE, i.e., the same vehicle that Carmosin had seen in front of Mackey's store on May 31, 1984. In addition, a white van, which was also mentioned in the tip, was parked across the street from the gray Ford LTD. After staking out the area for approximately a half hour, the defendant entered the vehicle and drove away. The officers followed the car for approximately two blocks, where the car stopped for a red light. The officers approached the car, asked the defendant to emerge from the car, patted him down, but found no weapon. Officer Carmosin "reached into the car, popped the hood lock, walked around the front of the vehicle, opened up the hood". Carmosin removed the air breather from over the carburetor and recovered a .38 caliber Colt which contained four live rounds. The defendant was then arrested.

In order to sustain the instant warrantless search, the police had the burden of establishing both the reliability of the anonymous tipster and of his information (see, People v Elwell, 50 NY2d 231; Aguilar v Texas, 378 US 108). There can be no question that the reliability of the informant, i.e., the first prong of the two-pronged test set forth in Aguilar v Texas (supra), was established here, by virtue of the officers' observation of the gray Ford LTD and the white van at the location given in the tip. As the Court of Appeals has stated (People v Elwell, supra, at 237): "Reliability of the informant as distinct from his information can be established * * * by the arresting * * * officer * * * by the personal observation by the police of sufficient details corroborative of the informant's data to indicate that he knew whereof he spoke. Reliability of the informant, therefore, can be corroborated by details * * * which in themselves are wholly unsuggestive of crime."

The Court of Appeals in People v Elwell (supra) reiterated, however, that, pursuant to Aguilar v Texas (supra), the reliability of the specific information passed on by the anonymous informant must also be established. As the Court of Appeals has stated (People v Elwell, supra, at 234-235): "for police observation to constitute the verification that will establish probable cause and permit a warrantless search or arrest predicated upon data from an informer who has not revealed the basis for his knowledge, it is not enough that a number, even a large number, of details of noncriminal activity supplied by the informer be confirmed. Probable cause for such

an arrest or search will have been demonstrated only when there has been confirmation of sufficient details suggestive of or directly related to the criminal activity informed about to make reasonable the conclusion that the informer has not simply passed along rumor, or is not involved (whether purposefully or as a dupe) in an effort to 'frame' the person informed against."

In the case at bar, the observations of the police officers taken together with their personal knowledge that Mason had been cruising by Mackey's business in a gray Ford LTD on prior occasions in an apparent attempt to harass Mackey prior to Mason's upcoming trial at which Mackey would presumably testify, was "suggestive of * * * the criminal activity" about which the anonymous informant had given information to the police (People v Elwell, supra, at 234). Accordingly, probable cause existed for the stop and search of the automobile and the defendant's motion to suppress the gun was properly denied.

The defendant also argues on the instant appeal that the trial court committed reversible error when it charged the jury, over defense counsel's objection, with the statutory presumption of illegal possession of a weapon by all persons occupying an automobile, pursuant to Penal Law § 265.15(3). Specifically, the defendant argues that since the gun was found in the carburetor, it was not rational to presume that the defendant had the ability and intent to exercise dominion and control over the weapon. We disagree with the defendant's argument.

Penal Law § 265.15 (3) provides in pertinent part as follows: "The presence in an automobile, other than a stolen one * * * of any firearm * * * is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon * * * is found". In Ulster County Ct. v Allen (442 US 140, 165), the United States Supreme Court held that the statutory presumption is applicable where there is a " 'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is 'more likely than not to flow from' the former".

The record in the case at bar indicates that access to the area below the hood, including the carburetor where the gun was found, was accomplished through the popping of a hood lock which was located inside the car and which was clearly accessible to the defendant driver. Under these circumstances, it was "rational to infer that defendant had both the ability

and intent to exercise dominion and control over the weapons" *(People v Davis,* 104 AD2d 1046, 1047).

We have examined the remaining arguments raised by the defendant, including those in his supplemental *pro se* brief, and find them either to be unpreserved for appellate review or without merit (CPL 470.05 [2]; *People v Suitte,* 90 AD2d 80; *People v Crimmins,* 36 NY2d 230; *People v Morse,* 62 NY2d 205; *People v Harris,* 61 NY2d 9; *People v Banks,* 117 AD2d 611). Mangano, J. P., Thompson, Bracken and Spatt, JJ., concur.